FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ AUG 16 2017 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
LYNICA MORALES, on behalf of herself
and all others similarly situated,

                      Plaintiff,

                - against -

ROCHDALE VILLAGE INC.,
MARION SCOTT REAL ESTATE, INC.,
MARION SCOTT, and HERBERT FREEDMAN,

                      Defendants.
------------------------------------------------------------ x

**MEMORANDUM & ORDER**

15 CV 502 (RJD) (RML)

DEARIE, District Judge

    Plaintiff brings this class action alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and New York Labor Law ("NYLL") by the owners and operators of Rochdale Village ("defendants"). Defendants move to compel arbitration for opt-in collective action plaintiffs and putative class members who were represented by the Special and Superior Officers Benevolent Association ("SSOBA" or "Union") during the relevant class period. Defendants assert that the collective bargaining agreement ("CBA") between Rochdale Village and the SSOBA requires Union members to arbitrate their claims and also that the arbitrator, and not the Court, is assigned the task of determining whether the parties agreed to arbitrate their claims. Because the Court agrees that the CBA gives the arbitrator the power to determine arbitrability, defendants' motion to compel arbitration is granted.

## BACKGROUND

    Rochdale Village is a cooperative housing development located in Jamaica, Queens, comprised of residential units and commercial, parking, recreational, and related facilities. Rochdale Village is owned and operated by defendant Rochdale Village Inc. ("Rochdale"). All

of Rochdale Village's residential and commercial space is managed by defendant Marion Scott Real Estate, Inc., a real estate management company that is co-owned by defendants Marion Scott and Herbert Freedman.

Plaintiff Lynica Morales was employed by Rochdale from May 2011 until October 2014, working in a purchasing position at Rochdale Village. She alleges that Rochdale engaged in an array of practices designed to systematically underpay its hourly employees. These alleged practices included improper rounding of employees' timesheets, awarding compensatory time in lieu of overtime compensation, automatically deducting meal breaks from timesheets, and requiring employees to perform off-the-clock work. Plaintiff seeks to represent five subclasses of similarly situated current and former hourly paid and non-exempt Rochdale employees. The complaint brings class action claims against defendants for: (1) unpaid minimum wage and overtime compensation under the FLSA, (2) nonpayment of straight wages under the NYLL, (3) unpaid overtime under the NYLL, (4) violation of the notice and recordkeeping requirements of the NYLL, and (5) violation of the wage statement provisions of the NYLL.

## PROCEDURAL HISTORY

Plaintiff initiated this action on February 2, 2015. See Compl. ECF No. 1. Defendants moved to dismiss the complaint for failure to state a claim in August 2015, see ECF No. 19, and this Court denied the motion in October 2015. See ECF No. 33. On April 8, 2016, plaintiff moved to conditionally certify the matter as a collective action under the FLSA on behalf of all hourly employees. See ECF No. 51. Magistrate Judge Levy granted plaintiff's conditional certification motion in part,[1] see ECF No. 63, and collective action opt-in notices were sent to all

---

[1] Magistrate Judge Levy noted that plaintiff did not allege that she was offered or accepted compensation time in lieu of overtime pay, but that she had observed hourly employees being offered compensation time. As such, Judge Levy denied the request to conditionally certify a

2

hourly employees of Rochdale Village working between August 15, 2013 and the present.[2] Shortly thereafter, defendants moved to compel arbitration for all opt-in employees and putative class members represented by the SSOBA pursuant to the arbitration clause in the CBA between Rochdale and SSOBA.

Articles 16 and 17 of the CBA spell out the grievance and arbitration procedure for represented employees. A grievance is defined as "any dispute arising during the term of [the CBA] between an employee or the [SSOBA] and [Rochdale], concerning the interpretation or application of the specific provisions of [the CBA]." Bardavid Aff. Ex. 1, § 16.1, ECF No. 103-1. The grievance procedure in Article 16 provides for a three-step process by which the dispute will be heard using Rochdale's internal dispute resolution mechanism. Section 17.1 states that the Union has a right to appeal to arbitration any grievances not resolved during the three-step process. This arbitration shall be referred "in accordance with the Voluntary Labor Arbitration Rules of the American Arbitration Association then prevailing in the City of New York." Id. Section 16.6 adds that "any disputes concerning or relating to an employee's wages and hours, including claims made pursuant to the Fair Labor Standards Act and the New York Labor Law shall also be subject to the grievance and arbitration procedure contained herein." Id.

## DISCUSSION

The Federal Arbitration Act (the "FAA") provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of [the] contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Supreme Court has described the FAA

---

subclass of hourly employees who were offered and accepted compensation time instead of overtime wages. The motion was otherwise granted.

[2] Counsel for defendant stated at the March 31, 2017 oral argument that 120 SSOBA represented employees had filed consent to join the action at that time.

3

as "embod[ying] [a] national policy favoring arbitration," AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 346 (2011) (alterations in original) (quoting Buckeye Check Cashing, 546 U.S. 440, 443 (2006). "[T]his policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes." Schnabel v. Trilegiant Corp., 697 F.3d 110, 118 (2d Cir. 2012). "But the FAA 'does not require parties to arbitrate when they have not agreed to do so.'" Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016) (quoting Schnabel, 697 F.3d at 118).

In deciding a motion to compel arbitration, "courts apply a 'standard similar to that applicable for a motion for summary judgment.'" Nicosia, 834 F.3d at 229 (quoting Bensadoun v. Jobe–Riat, 316 F.3d 171, 175 (2d Cir. 2003)). Courts therefore "consider all relevant, admissible evidence submitted by the parties." Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)). All reasonable inferences must be drawn in favor of the non-moving party. Nicosia, 834 F.3d at 229

"The question of whether the parties have agreed to arbitrate, i.e., the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." Nicosia, 834 F.3d at 229 (quotation omitted). "The threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." Id.

The parties' dispute occurs on two levels. The parties first dispute the scope and applicability of the arbitration clause, and whether it requires SSOBA represented employees to submit their claims to arbitration. The parties also dispute whether the Court is the correct

4

tribunal to address the first question, since defendants argue[3] that the CBA requires the arbitrator, and not the Court, to address the threshold question of arbitrability.

The question of who decides arbitrability is a narrow one, and it is an inquiry distinct from both the merits of the claims and the arbitrability of the claims. As the Supreme Court explained:

> First, [the parties] disagree about [liability in a contract dispute]. That disagreement makes up the *merits* of the dispute. Second, they disagree about whether they agreed to arbitrate the merits. That disagreement is about the *arbitrability* of the dispute. Third, they disagree about *who should have the primary power to decide the second matter*. Does that power belong primarily to the arbitrators (because the court reviews their arbitrability decision deferentially) or to the court (because the court makes up its mind about arbitrability independently)?

First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995) (emphasis in original). At hand is this third inquiry – does the CBA empower the Court or the arbitrator to decide arbitrability?

In New York,[4] "the question of arbitrability is an issue generally for judicial determination" unless the parties "evince[] a 'clear and unmistakable' agreement to arbitrate arbitrability." Smith Barney Shearson Inc. v. Sacharow, 91 N.Y.2d 39, 45–46 (1997) (citing

---

[3] Plaintiff observed, correctly, at oral argument that defendant first argued that the arbitrator should decide arbitrability in its reply, not in its moving papers. The Second Circuit has noted that district courts are free to disregard arguments raised for the first time in reply memoranda, but that they need not *necessarily* do so. See Ruggiero v. Warner-Lambert Co., 424 F.3d 249, 252 (2d Cir. 2005). Because this issue is central to the question of arbitrability, the Court considers it.

[4] The CBA does not contain a choice of law provision. "Where there is no applicable choice of law provision, courts in New York apply a 'center of gravity' approach to determine the governing law in contract cases." Mumin v. Uber Techs., Inc., No. 15CV6143NGGJO, 2017 WL 934703, at *8 (E.D.N.Y. Mar. 8, 2017), reconsideration denied sub nom. Ortega v. Uber Techs. Inc., No. 15CV7387NGGJO, 2017 WL 1737636 (E.D.N.Y. May 2, 2017). Given the location of the events giving rise to the lawsuit and the residencies of the parties, the Court finds that New York is the center of gravity of this action. Accordingly, New York contract law applies to the interpretation of the CBA for the purposes of this opinion.

Primex Int'l Corp. v. Wal-Mart Stores, Inc., 89 N.Y.2d 594, 598 (1997). Defendants assert that the parties gave the arbitrator the authority to determine arbitrability by incorporating the Voluntary Labor Arbitration Rules of the American Arbitration Association ("AAA") into the arbitration provision of the CBA. The Court agrees.

As noted above, Section 17.1 of the CBA provides that disputes shall be referred to arbitration in accordance with the Voluntary Labor Arbitration Rules of the AAA. See Bardavid Aff. Ex. 1, § 17.1. Rule 3 of the AAA Rules expressly designates the arbitrator as the person to decide questions of arbitrability. See AAA Rule R-3(a), Second Bardavid Aff. Ex. C, ECF No. 107-1 ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement.").

Where "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec Corp. v. Remote Sol., Co., 398 F.3d 205, 208 (2d Cir. 2005); see also Lapina v. Men Women N.Y. Model Mgmt., 86 F. Supp. 3d 277, 283–84 (S.D.N.Y.2015) ("[A] party who signs a contract containing an arbitration clause and incorporating by reference the AAA rules . . . cannot [later] disown its agreed-to obligation to arbitrate all disputes, including the question of arbitrability.").

At oral argument, plaintiff disputed that the incorporation of the AAA rules into the CBA evinced the parties' intent to submit the arbitrability question to the arbitrator. Citing NASDAQ OMX Group, Inc. v. UBS Securities, LLC, 770 F.3d 1010 (2d Cir. 2014), plaintiff argued that the presence of the AAA rules is irrelevant because this dispute is carved out of the arbitration provision, averring that it does not "concern[] the interpretation or application of the specific provisions of the [CBA]." Bardavid Aff. Ex. 1, § 16.1. But plaintiff's reliance on NASDAQ is

6

misplaced. There, the arbitration clause contained a broad carve-out that listed a variety of disputes not subject to arbitration. NASDAQ, 770 F.3d at 1032. Because at least one claim arguably fell within the carve-out, there was no clear and unmistakable evidence that the parties decided to arbitrate the substantive claim, let alone the question of arbitrability. Id. Here, the arbitration clause of the CBA contains no such carve-out. Though plaintiff correctly observes that the dispute procedure is limited to interpretation and application of specific provisions of the CBA, Section 16.6 of the CBA makes explicit reference to the type of claims relevant here, i.e. those made pursuant to the FLSA and NYLL, and subjects them to the dispute and arbitration procedure. See Bardavid Aff. Ex. 1, § 16.6. These claims are therefore expressly covered by the arbitration clause of the CBA.

Plaintiff also cited Zachariou v. Manios, 68 A.D.3d 539 (2009), where the Appellate Division of the New York Supreme Court found that incorporation of the AAA rules did not require the arbitrator to decide arbitrability. Id. There, however, the arbitration clause was extremely narrow and related only to questions regarding the amount of distributions paid to certain family members of a family-owned business. Id. The arbitration clause in Article 17 of the CBA is substantially broader, and more closely resembles the agreement found by the Second Circuit in Contec, which also governed any "controversy arising with respect to [the] agreement," to assign questions of arbitrability to the arbitrator. 398 F.3d at 208.

In sum, the parties, by incorporating the AAA rules into the CBA, granted the arbitrator the power to determine arbitrability. The arbitrator will decide whether the SSOBA members must proceed to arbitration to resolve their disputes or whether they may join their non-SSOBA represented colleagues in this action. The arbitrator will also decide any threshold, procedural questions, such as whether the SSOBA employees must exhaust Rochdale's three-step grievance

7

process before their claims may be referred to arbitration and whether the SSOBA represented employees may bring their claims collectively. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) ("[P]rocedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide.") (internal quotations omitted).

## CONCLUSION

For the foregoing reasons, defendants' motion to compel arbitration for claims asserted by opt-in plaintiffs and putative class members who are represented by the SSOBA is granted.

SO ORDERED.

Dated: Brooklyn, New York
       August 11, 2017

                                        s/ RJD
                                        RAYMOND J. DEARIE
                                        United States District Judge

8